UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISHMAEL BEN-REUBEN,

                        Plaintiff,

             v.

WESTCHESTER COUNTY; and OFFICER ROCHESTER, in her official and individual capacities,

                        Defendants.

No. 17-CV-9156 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Ishmael Ben-Reuben
Dannemora, NY
*Pro Se Plaintiff*

Irma Wheatfield Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiff Ishmael Ben-Reuben ("Plaintiff"), currently incarcerated at Clinton Correctional Facility, filed the operative Complaint, pursuant to 42 U.S.C. § 1983, against Westchester County (the "County"), and Officer Rochester ("Rochester") (collectively, "Defendants"). (Compl. (Dkt. No. 2).) Plaintiff alleges that Defendants violated his constitutional rights when Defendant Rochester "smacked [him] across the face." (*See* Compl. 4.)

      Before the Court is Defendants' Motion To Dismiss the Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 15); Defs.' Mem. of Law in Supp.

of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 17)².) Defendants argue that Plaintiff's Complaint fails to state a claim as to all Defendants. (*See generally* Defs.' Mem.) For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), and Plaintiff's Opposition to Defendants' Motion and accompanying exhibits, (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 22)), and are taken as true for the purpose of resolving the instant Motion. Plaintiff was a pretrial detainee at the time of filing the Complaint. (*See* Compl. 2.)

On July 16, 2017, Plaintiff was housed at Westchester County Department of Corrections ("WCDOC"), and Rochester was the assigned block officer for his area for the evening shift. (*Id.* at 4.) At 9:45 p.m. "lock in," Rochester was engaging in a conversation with another inmate. (*Id.*) Plaintiff approached Rochester "and asked her why she was . . . so aggressive." (*Id.*) Rochester then "smacked [Plaintiff] across the face and stated to [him][,] because 'she is like that.'" (*Id.*) Plaintiff "held [his] face in pain and walked to enter [his] cell." (*Id.*) Rochester then entered Plaintiff's cell and "told [him] to keep [his] mouth shut." (*Id.*) Rochester did not write a disciplinary report or a use of force report. (*Id.*) Plaintiff alleges that Rochester's use of force "was not in compliance or a good faith effort to [maintain] and restore discipline, but was malicious and sadistic to cause [him] harm." (Pl.'s Mem. 1.) As a result, Plaintiff suffered "[b]odily pain, inconvenience and discomfort, humiliation, anxiety[,] and mental suffering," and seeks $150,000 in compensatory damages and $300,000 in punitive damages. (Compl. 5.)

Plaintiff also attached several exhibits to his Opposition. The first is an inmate grievance form filed by Plaintiff on July 17, 2017, which was "denied on merit" the same day. (*See* Pl.'s Mem. Ex. A ("July 17 Grievance").) The second is a letter from Sergeant Hogue ("Hogue") dated July 17, 2017, explaining that Plaintiff's grievance was received and that an investigation "is ongoing and is currently being reviewed by our Use of Force Review Board." (Pl.'s Mem. Ex. B ("Hogue Letter").) The third is a letter from Assistant Warden Karl Vollmer ("Vollmer") on July 19, 2017, indicating that a review of available video of the incident "indicates that there is sufficient evidence which warrants further investigation," and that the decision to deny Plaintiff's grievance "is overturned and the grievance is accepted." (Pl.'s Mem. Ex. C ("July 19 Vollmer Letter").) The fourth is an inmate grievance form filed by Plaintiff on October 31, 2017, requesting an update on the status of the investigation; the form includes a response from Sergeant Lombardo ("Lombardo") the following day indicating that the investigation "has been concluded," and that the "special investigation unit . . . have substantiated that Officer Rochester used unnecessary force," but that it "was not determined whether any assault took place." (Pl.'s Mem. Ex. D ("Oct. 31 Grievance").) The final exhibit is a letter from Vollmer dated November 2, 2017, confirming that Lombardo's response was accurate and that "Lombardo's response must . . . stand as your official notification that the investigation has been completed and it was found that you were in fact 'smacked' in the face by the officer." (Pl.'s Mem. Ex. E ("Nov. 2 Vollmer Letter").)

B. Procedural Background

Plaintiff filed the Complaint on November 21, 2017. (*See* Compl.) The Court granted Plaintiff's request to proceed in forma pauperis on February 1, 2018. (Dkt. No. 5.)

On June 29, 2018, Defendants filed the instant Motion To Dismiss. (Not. of Mot.; Defs.' Mem.) On July 10, 2018, Plaintiff filed an Opposition. (Pl.'s Mem.) On August 17, 2018, Defendants filed a Reply. (Defs.' Reply in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 27).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than

4

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)

(quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  Excessive Force

Defendants argue that the alleged "smack" across the face is a de minimis use of force that does not rise to the level of a constitutional claim for excessive use of force as a matter of law. (*See* Defs.' Mem. 9–11.)

a.  Applicable Law

Excessive force claims brought by pretrial detainees "are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment." *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The Supreme Court has held that for "excessive force claims of pretrial detainees . . . , 'the appropriate standard is solely an objective one.'" *Id.* (alteration omitted) (citing *Kinglsey v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). To establish a claim for excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. Considerations that may bear on the reasonableness of the force used include:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

6

*Id.*; *see also Edrei v. Maguire*, 892 F.3d 525, 537 (2d Cir. 2018) (holding that "*Kingsley* provides the appropriate standard for all excessive force claims brought under the Fourteenth Amendment").

### b. Application

Defendants argue that Plaintiff's excessive force claim against Rochester fails because "[c]ourts have routinely held that, in measuring whether a correction officer has objectively used excessive force, a de minimis use of force will rarely suffice to state a cognizable constitutional claim." (Defs.' Mem. 7.) Plaintiff argues that the force used by Rochester was "not a good faith effort" to maintain or restore discipline, but rather was a "malicious and sadistic" effort to harm Plaintiff, and that Defendants' Motion should therefore be denied. (Pl.'s Mem. 1.)

Although true that a de minimis use of force will "rarely suffice" to state a constitutional claim, "[o]ffense to decency, rather than severity of the injury, is dispositive: 'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Adilovic v. County of Westchester*, No. 08-CV-10971, 2011 WL 2893101, at * 5 (S.D.N.Y. July 14, 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). This is especially true with respect to pretrial detainees, who have not been convicted of a crime and therefore "cannot be punished at all, much less maliciously and sadistically." *Kingsley*, 135 S. Ct. at 2475 (citation and quotation marks omitted). Even without serious injuries, a defendant's actions "could still constitute excessive force because 'the use of entirely gratuitous force is unreasonable and therefore excessive.'" *Banks v. County of Westchester*, 168 F. Supp. 3d 682, 690 (S.D.N.Y. 2016) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010)); *see also Ruffino v. McDaniel*, No. 09-CV-1915, 2011 WL 2470699, at *5 (D. Conn. June 20, 2011) (distinguishing cases

7

dismissing excessive force claims because "[i]n none of the cited cases . . . was the prisoner subdued and compliant at the time force was used"). "Therefore, even in the absence of significant injury, if a complaint may be construed to allege the malicious use of force, an excessive force claim should not be dismissed for failure to state a claim." *Benjamin v. Flores*, No. 11-CV-4216, 2012 WL 5289513, at *4 (E.D.N.Y. Oct. 23, 2012).

Although many cases in the Second Circuit have held that "an open-handed slap . . . , with no medical evidence and no other evidentiary support of injury, does not rise to the level of a constitutional violation," *Santiago v. City of Yonkers*, No. 13-CV-1077, 2015 WL 6914799, at *8 (S.D.N.Y. Oct. 30, 2015), such cases typically involve "grants of motions for summary judgment, where evidence presented to the court either undermined the credibility of the plaintiff's allegations or showed the plaintiff's injuries to be minimal." *Benjamin*, 2012 WL 5289513, at *3 (collecting cases). This includes many of the cases relied on by Defendants. *See, e.g.*, *Evans v. Balmer*, No. 13-CV-805, 2017 WL 1106939 (W.D.N.Y. 2017) (granting summary judgment for the defendants where the plaintiff "testified that he had no injury as a result of" being slapped on his face, and the plaintiff's deposition testimony contradicted some of his allegations regarding the incident); *Santiago*, 2015 WL 6914799, at *8 (granting summary judgment because the plaintiff's allegations that he was repeatedly slapped by the defendants were "unaccompanied by any competent evidence of significant injury"); *Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 674–75 (S.D.N.Y. 2000) (granting summary judgment where there was "no medical evidence that plaintiff sustained any physical injury"). Additionally, as Defendants themselves note, most such cases are analyzing claims under the Eighth Amendment, rather than the Fourteenth Amendment. (*See* Defs. Mem. 10.)

8

At the motion-to-dismiss phase, courts are typically hesitant to dismiss excessive force claims even where no serious injuries are alleged if the use of force alleged was "entirely gratuitous." *Banks*, 168 F. Supp. 3d at 690 (noting that "even without [alleging] injuries, [the] [d]efendants' actions could still constitute excessive force because 'the use of entirely gratuitous force is unreasonable and therefore excessive" (quoting *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010))); *see also Benjamin*, 2012 WL 5289513, at *3 (denying motion to dismiss excessive force claim based on a single slap where "the court [cannot] say—at the motion to dismiss stage, construing the complaint liberally—that the slap was applied 'in a good faith effort to maintain or restore discipline,' rather than 'maliciously or sadistically' to cause harm." (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))); *see also Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) ("*Hudson* . . . makes clear that excessive force is defined as force not applied in a 'good-faith effort to maintain or restore discipline.'" (quoting *Hudson*, 503 U.S. at 8)). "Though [P]laintiff's excessive force claim may be 'weak' or 'thin,' it plausibly states a claim that [Rochester] acted unlawfully, and therefore dismissal for failure to state a claim is inappropriate." *Benjamin*, 2012 WL 5289513, at *4 (some citations omitted) (quoting *Griffen v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999)). Defendants' Motion To Dismiss Plaintiff's excessive force claim against Rochester is therefore denied.[1]

2. Failure to File a Disciplinary or Use of Force Report

To the extent Plaintiff seeks to assert a constitutional claim based on Rochester's failure to file a disciplinary report or a use of force report, (Compl. 4), which Plaintiff asserts is

---

[1] The Court declines to consider at this time whether Rochester is protected by qualified immunity. Defendants' qualified immunity "argument" runs to approximately half a page and fails to meaningfully apply the qualified immunity caselaw to the facts of this case, instead merely reiterating Defendants' position that Plaintiff has not sufficiently alleged a constitutional claim for excessive force, an argument the Court has already rejected. (*See* Defs.' Mem. 13.)

9

"required whenever any officer uses force," (Pl.'s Mem. 1), a government official's violation of internal policy, on its own, does not give rise to a constitutional claim. *See Walker v. City of New York*, No. 17-CV-9414, 2019 WL 568392, at *16 (S.D.N.Y. Feb. 12, 2019) ("[T]he failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim." (citation and alteration omitted)); *Holland*, 197 F. Supp. 3d at 549 ("An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because 'federal constitutional standards rather than state law define the requirements of procedural due process.'" (alterations omitted) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990))); *Jones v. Ng*, No. 14-CV-1350, 2015 WL 998467, at *7 n.14 (S.D.N.Y. Mar. 5, 2015) (finding that although the plaintiff correctly argued that correction officers failed to follow internal policies and procedures, the failure to follow departmental policy "does not necessarily violate an individual's constitutional rights" (collecting cases)); *Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 490 (S.D.N.Y. 2010) (dismissing claims against probation officers because, inter alia, "a breach of departmental policy does not by itself constitute a constitutional violation" (citing *Virginia v. Moore*, 553 U.S. 164, 172 (2008))); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim." (citation omitted)). Plaintiff's allegations that Rochester failed to file a disciplinary or use of force report "as required" therefore fail to state a constitutional claim.

### 3. *Monell* Claims

Plaintiff names the County as a defendant in this Action, but does not make any allegations sufficient to establish municipal liability against it. To prevail on a claim against a

10

municipality under § 1983 based on the acts of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91).[2] The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (noting that a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

---

[2] Plaintiff also brings his excessive force claim against Rochester in her official capacity. (*See* Compl. 1.) However, claims against individual defendants "in their official capacities are duplicative of . . . claims against the" municipality. *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594, 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018); *see also Castanza v. Town of Brookhaven*, 700 F. Supp.2d 277, 283–84 (E.D.N.Y. 2010) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (quoting *Monell*, 436 U.S. at 691)).

Here, Plaintiff fails to allege that Rochester or any County employee acted pursuant to any formal County policy, or an informal practice or custom of the County, or that Rochester or any County employee was responsible for the promulgation of policies relevant to Plaintiff's claims, or that Rochester or any County employee failed to receive adequate training or supervision and, because of that failure, caused Plaintiff's injuries. Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim, Plaintiff's claims against the County must be dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).[3]

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied in part. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within the amended complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the earlier

---

[3] Plaintiff has not asserted any due process claims based on the outcome of his filing of an inmate grievance. However, to the extent he intended to raise such a claim by including correspondence relating to his filing of a grievance to his Opposition, "[i]t is well-established that prison grievance procedures do not create a due-process-protected liberty interest." *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013); *see also Kotler v. Boley*, No. 17-CV-239, 2018 WL 4682026, at *5 (S.D.N.Y. Sept. 28, 2018) (dismissing "[the] [p]laintiff's claim that [the] [d]efendant . . . violated his right to due process by interfering with the grievance process and making it extremely difficult for [the] [p]laintiff to file a grievance in this matter," because "inmates do not have a protected liberty interest in the processing of their prison grievances" (alterations and quotation marks omitted)); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.").

complaint. The amended complaint must contain all of the claims against all Defendants. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, the claims dismissed herein without prejudice may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 15), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: March 28, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE